IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| JOE S.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 3:19-cv-00025 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER | ) | By:    Joel C. Hoppe |
| OF SOCIAL SECURITY, | ) |          United States Magistrate Judge |
|     Defendant. | ) | |

Plaintiff Joe S. asks this Court to review the Commissioner of Social Security's final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 6. Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's final decision is supported by substantial evidence and should be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See*

*Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 416.920(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In June 2016, Joe filed for SSI alleging that he had been unable to work since at least January 1, 2014, because of arthritis in all joints, a broken left rib, screws in his right leg, a bullet hole in his left foot, and shortness of breath. *See* Administrative Record ("R.") 56–57, 143–49, 156, 160–61, ECF No. 10. Joe was fifty-two years old, or a "person closely approaching advanced age" under the regulations, when he applied for disability benefits. R. 56; 20 C.F.R. § 416.963(d). Disability Determination Services ("DDS"), the state agency, denied his claim initially in September 2016, R. 56–65, and upon reconsideration that December, R. 66–75. In December 2017, Joe appeared with counsel and testified at an administrative hearing before ALJ Ted Annos. *See* R. 27–45. A vocational expert ("VE") also testified at this hearing. R. 46–52.

ALJ Annos issued an unfavorable decision on May 10, 2018. R. 13–21. He first found that Joe had not worked since June 27, 2016, the date he filed for SSI. R. 15. At step two, ALJ Annos found that Joe's "cervical and lumbar spine disorders, bilateral elbow disorders, and bilateral hand disorders" were "severe" medically determinable impairments. *Id.* Joe's other medical conditions documented throughout his record, including a fractured rib and respiratory disorder, were "non-severe" impairments. R. 15–16. Joe's severe musculoskeletal impairments did not meet or medically equal the relevant Listings R. 16 (citing 20 C.F.R. pt. 404, subpt. P,

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

app. 1 §§ 1.02, 1.04). ALJ Annos then evaluated Joe's residual functional capacity ("RFC") and found that he could perform "medium" work[3] that involved "only frequent[]" bilateral handling and fingering, pushing and pulling with the upper extremities, stooping, crawling, or climbing ladders, ropes, and scaffolds. R. 16. These restrictions ruled out Joe returning to his past work as a landscape laborer. *See* R. 20, 46–47. Finally, based on the RFC finding and the VE's testimony, ALJ Annos found that Joe could perform other, less demanding work (e.g., custodian, production worker, mail clerk, parking lot attendant) that offered a significant number of jobs in the national economy. R. 21; *see* R. 47–48. Accordingly, ALJ Annos concluded that Joe was not disabled during the relevant period. R. 21. The Appeals Council denied Joe's request to review the ALJ's decision, R. 3–7, and this appeal followed.

### III. Discussion

Joe raises two objections in the "Argument" section of his brief, both of which challenge the ALJ's RFC determination. *See* Pl.'s Br. 6–7, ECF No. 13.[4] First, he maintains that ALJ Annos did not conduct a function-by-function analysis of his exertional capacities and non-exertional limitations, including the ability to use his upper extremities. *Id.* at 6; *see also id.* at 2, 4–5, 7. Second, Joe challenges ALJ Annos's finding that Joe's testimony describing the

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c); *see* R. 19. "The considerable lifting required for the full range of medium work usually requires frequent bending-stooping" and standing or walking, off and on, for about six hours total during an eight-hour day. SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983); *see* R. 19. "Use of the arms and hands is necessary to grasp, hold, and turn objects," but medium work typically does not "require precision use of the fingers" to perform "finer activities." SSR 83-10, 1983 WL 31251, at *6.

[4] The brief's preceding "Statement of the Case" section also includes a scattershot discussion of various perceived errors for which Joe's attorney did not develop a legal argument. *See generally id.* at 2–6. Accordingly, I will not consider those objections. *Cf. Grayson O Co. v. Agadir Int'l*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that district courts are "not require[d] . . . to conjure up questions never squarely presented to them" in pro se pleadings).

4

intensity, persistence, and limiting effects of his physical pain was not entirely consistent with the medical evidence in his record. *Id.* at 6; *see also id.* at 2–4, 6–7. Joe asserts that "his unrebutted testimony was credible" and that, "[w]hen considered with the findings of treating/examining physicians" and MRI findings from November 2017, "the record fully supports" a conclusion that he was limited to "sedentary"[5] work "with non-exertional limitations and limited literacy." *Id.* at 6; *see also id.* at 2–3, 6–7. His arguments are not persuasive.

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016).

The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ

---

[5] "Sedentary" work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledges, and small tools." 20 C.F.R. § 416.967(a). "Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). The "majority of individuals . . . age 50 or older" limited to sedentary work will be presumed disabled. *Id.*

5

must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Second, the ALJ's decision must provide a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how he weighed any conflicting or inconsistent evidence in arriving at his conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when he considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and built an "accurate and logical bridge from that evidence to his conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). *See Thomas*, 916 F.3d at 311–12; *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017).

ALJ Annos's decision satisfies this "deferential" standard of review. *Jarvis v. Berryhill*, 697 F. App'x 251, 252 (4th Cir. 2017). First, the ALJ *expressly* conducted a function-by-function assessment of Joe's ability to do work-related activities and made specific findings, supported by citations to relevant evidence in the record, about Joe's impairment-related "exertional" and "non-exertional" functional limitations. *See* R. 16–17, 19–20 (citing R. 61–62, 71–72 (DDS medical opinions); R. 234–35, 265, 267–68, 272, 275, 319, 339–40, 358, 412, 453, 517, 535, 552, 576, 595, 643–44, 660, 728, 747–48 (generally normal physical exam findings); R. 239, 249–52, 632–33, 644, 772–74 (X-ray and MRI results showing degenerative changes); R. 36–45, 58, 170, 233, 265, 268–67, 270, 641, 723, 747–48 (Joe's statements describing his functional abilities and limitations)). ALJ Annos found that Joe could meet the specific demands of medium-exertion work, such as lifting up to 50 pounds at one time, "frequently"[6] lifting or

---

[6] "'Frequent' means occurring from one-third to two-thirds of the time," or about six hours during an eight-hour workday. SSR 83-10, 1983 WL 31251, at *6.

carrying 25 pounds, and sitting and standing/walking for six hours each during an eight-hour workday. R. 19 (citing R. 61–62, 71–72 (DDS medical opinions)); *see also* R. 16 (citing 20 C.F.R. § 416.967(c)). He also restricted Joe to "frequently" using his arms and hands to push/pull and handle/finger and "frequently" stooping, crawling, and climbing ladders/ropes/scaffolds— meaning that Joe could perform those "non-exertional" activities for at most six hours in an eight-hour workday. R. 16, 19–20; *see* SSR 83-10, 1983 WL 31251, at *6. The Commissioner's rules and regulations required nothing more in this case. *See Mascio*, 780 F.3d at 636 (citing SSR 96-8p,1996 WL 374184).[7]

Joe's second argument challenges ALJ Annos's evaluation of his symptoms. The regulations set out a two-step process for ALJs to evaluate symptoms as part of the RFC assessment. *Lewis*, 858 F.3d at 865–66; 20 C.F.R. § 416.929. "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms," *Lewis*, 858 F.3d at 866, "in the amount and degree[] alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 589–90 (4th Cir. 1996). Second, assuming the claimant clears the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit [his] ability," *Lewis*, 858 F.3d at 866, to work on a regular and continuing basis, *see Mascio*, 780 F.3d at 637; *Hines*, 453 F.3d at 565. "The second determination requires the ALJ to assess the credibility of [subjective] statements about symptoms and their functional effects," *Lewis*, 858 F.3d at 866, after considering all the relevant

---

[7] To the extent Joe argues that ALJ Annos should have made "specific findings" about other non-exertional capacities, such as Joe's alleged "limitations on the . . . ability to maintain acceptable attendance, maintain acceptable productivity, etc.," Pl.'s Br. 4, Joe does not identify any specific functional limitations or point to any evidence in the record that would support their inclusion in the RFC, *see Mascio*, 780 F.3d at 636; *Felton-Miller*, 459 F. App'x at 229–30; *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007).

evidence in the record. 20 C.F.R. §§ 416.924a, 416.926a, 416.929(c). A reviewing court will uphold the ALJ's credibility determination if his articulated rationale is legally adequate and supported by substantial evidence in the record. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (citing *Eldeco, Inc. v. NLRB*, 132 F.32 1007, 1011 (4th Cir. 1997)).

Joe alleges he is disabled by pain and weakness in his elbows and hands, lower back, and right leg. *See generally* Pl.'s Br. 2–3, 6–7; R. 36–38, 41–42, 58, 189. In August 2016, Joe told a DDS agent that he handled his own personal care, cooked simple meals, fed and cared for five cats and four dogs every day, and would run errands, go to church, and visit friends and family at least once a week if someone drove him. R. 58. He did not drive "due to non-medical reasons." *Id.* He could stand for ten minutes, walk for fifteen minutes, sit for thirty minutes, and frequently lift/carry about 20 pounds. R. 58, 170. Sometimes he used a non-prescription cane "to ambulate if needed." R. 58. Prescription pain medication "temporarily decrease[d] pain and increase[d] mobility" in his hands and elbows. *Id.* In September 2017, Joe told his doctor that he was "always doing stuff around the house" now that he was "retired." R. 723. That December, Joe testified that he suffered from diffuse joint pain, severe lower back and right-leg pain, and a weak grip. *See* R. 36–37, 41–42. Injections gave him temporary relief. *See* R. 37. He no longer did any housework, R. 39, or participated in social activities, R. 44. His wife helped him bathe and put on his socks and shoes. R. 39. Joe estimated that he could stand for at most ten minutes and walk for one-city block, or about five minutes. R. 42.

ALJ Annos summarized Joe's statements, along with all the relevant medical and other evidence, in his written decision. *See* R. 15–21. He found that Joe's medical impairments could reasonably be expected to cause his alleged physical pain and other symptoms, but that Joe's testimony describing their intensity, persistence, and limiting effects were "not entirely

consistent with the medical and other evidence in the record." R. 19. ALJ Annos cited specific exhibits showing that although Joe "occasionally" had some muscle or joint tenderness and decreased range of motion on physical exams throughout the relevant period, he also exhibited "consistently . . . normal strength, normal sensation, normal reflexes, negative straight leg raises," and normal unassisted gait. *Id.* (citing R. 265, 267–68, 272, 275, 319, 339–40, 358, 412, 453, 535, 552, 576, 643–44, 660, 747–78); *see also* R. 17 (citing R. 233–37, 238–39). Joe's lumbar spine impairment was treated "conservatively," R. 19, with injections and prescription medications that provided some relief, *see* R. 16–19 (citing R. 37, 58, 268, 273, 276, 550–53). X-rays of Joe's bilateral upper extremities showed "only mild degenerative changes" in the hands and one elbow. R. 19 (citing R. 239, 251). Joe reported that his elbow pain improved with over-the-counter Tylenol. *Id.* (citing R. 233). He usually complained to medical providers about back or joint pain, but there were "several occasions" when he denied "any pain, weakness[,] or numbness in the lower extremities." *Id.* (citing R. 265, 267–68, 270, 641,747–48). Finally, ALJ Annos found that Joe's statements to DDS in August 2016 that he could lift twenty pounds frequently and independently perform normal daily activities, along with his comment to a doctor in September 2017 that he was "always doing stuff around the house," undermined Joe's later testimony that he could stand for fewer than ten minutes, could not walk "very far" because of pain, and did not do any daily activities. *See* R. 17, 19 (citing R. 39, 42, 58, 170, 723).

  These were specific, legitimate reasons for the ALJ to find that Joe's symptoms were not as debilitating as he alleged, *See Bishop*, 583 F. App'x at 68; *Chestnut v. Colvin*, No. 4:13cv8, 2014 WL 2967914, at *6 (W.D. Va. June 30, 2014), and they are fully supported by the record. Joe does not mention these reasons, arguing instead that his "unrebutted testimony was credible" and that the ALJ should have restricted him to "sedentary" work with unidentified "non-

9

exertional limitations and limited literacy."[8] Pl.'s Br. 6; *see id.* at 3 (citing R. 773–74). The question before this Court, however, is whether ALJ Annos's RFC restricting Joe to medium work with some restrictions on postural activities and handling/fingering and pushing/pulling with the upper extremities, R. 16, 19–20, is supported by substantial evidence in the record. I find that it is. ALJ Annos gave "great weight" to the DDS physicians' medical opinions that Joe could perform the specific demands of medium work because they were supported by the medical record, in particular the generally unremarkable findings on Joe's physical exams and the mild abnormalities shown on diagnostic images. R. 19; *see* R. 61–62, 70–72. He added the non-exertional limitations, which the DDS physicians did not identify in 2016, based on later X-rays and MRIs showing more "advanced" degeneration in the lumbar spine. R. 20 (citing R. 632, 773–74).

## IV. Conclusion

Joe does not identify any reversible error in ALJ Annos's RFC analysis or "point to any specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (emphasis omitted). Instead, he urges the Court to reweigh the same evidence that ALJ Annos considered and to conclude that the ALJ should have found him disabled. *See* Pl.'s Br. 3 (citing R. 773–74); *id.* at 6–7. The Court's role is "to determine whether the ALJ's decision is supported

---

[8] Joe attributes his "limited literacy" to the fact that he "has a 6th grade (marginal) education," rather than to an underlying medically determinable mental impairment. Pl.'s Br. 3. Because Joe's educational level in this case was a "vocational factor," and not a medically determinable impairment, ALJ Annos "was not allowed to factor" literacy into the RFC finding. *Cynthia T. v. Saul*, No. 4:18cv11, 2019 WL 9075877, at *7 (W.D. Va. July 11, 2019), *adopted by* 2019 WL 4855172 (W.D. Va. Oct. 1, 2019); *Mohamadmajid S. v. Saul*, No. 5:18cv5, 2019 WL 9075957, at *3 (W.D. Va. July 10, 2019). Joe's education level was relevant at step five, where ALJ Annos found that Joe had "a marginal education and [was] able to communicate in English," but that he was not "illiterate" under 20 C.F.R. § 416.964. *See* R. 20. Joe does not challenge those findings.

...

as a matter of fact and law. There were a number of conflicts in the evidence here, and [I cannot] second guess the ALJ in resolving those conflicts." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). ALJ Annos's decision and rationale are supported by substantial evidence in the record and therefore the decision will be affirmed.

    A separate Order shall enter.

    The Clerk shall send a copy of this Opinion to the parties.

    ENTER: November 30, 2020

    Joel C. Hoppe
    United States Magistrate Judge

...